IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KIDDIE ACADEMY DOMESTIC
FRANCHISING, LLC

    *Plaintiff,*

    v.

WONDER WORLD LEARNING, LLC,
*et al.*,

    *Defendants.*

Civil Action No. ELH-17-3420

**MEMORANDUM OPINION**

This Memorandum Opinion resolves a motion for leave to file a second amended counterclaim, submitted by defendants Wonder World Learning, LLC ("Wonder World" or "WWL") and Sumanth Nandagopal and Supriya Sumanth, who are husband and wife.[1]

On November 16, 2017, plaintiff Kiddie Academy Domestic Franchising, LLC ("Kiddie" or "Kiddie Academy") sued its former franchisee, Wonder World, and the franchisee's principals, the Sumanths, alleging trademark and copyright infringement, breach of contract, and breach of guaranty, and seeking declaratory judgment. ECF 1 (the "Complaint"). Plaintiff, a franchisor of early childhood learning centers, alleges that defendants, who opened a Kiddie franchise in Cedar Park, Texas in August 2015, defaulted on their financial obligations and have refused to return copyrighted materials. *Id.*

---

[1] It appears that Mr. Nadagopal and Ms. Sumanth adhere to naming customs that are culturally different from those typically observed in the United States. *See* ECF 27-1 at 5 n.1. Because they share the name "Sumanth" in common, when I refer to them collectively, I shall sometimes do so as the "Sumanths." *See* ECF 27-1 at 5 n.1. I also refer to them variously as the "Guarantors" or the "couple." And, along with WWL, I refer to them collectively and interchangeably as defendants or counterclaimants.

In response to Kiddie Academy's lawsuit, defendants filed counterclaims against Kiddie and brought third-party claims against nine of Kiddie's officers. ECF 22 ("Counterclaim"). Counterclaimants contend that Kiddie Academy falsely represented the costs of constructing and operating the franchise and their business prospects, which induced defendants to enter a franchisor-franchisee relationship and to construct a Kiddie childhood center.

Plaintiff moved to dismiss the Counterclaim. But, Judge Marvin Garbis, to whom the case was then assigned, denied the motion and permitted defendants to amend. ECF 24.[2]

On May 7, 2018, defendants filed a "First Amended Counterclaim And First Amended Third-Party Complaint" against Kiddie and the same nine Kiddie officers. ECF 25 (sometimes called "FAC"). The First Amended Counterclaim contains ten counts lodged under Maryland and federal law, including fraud (Counts One through Three); negligent misrepresentation (Count Four); defamation (Count Five); detrimental reliance (Count Six); and the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1971, *et seq*. (Counts Seven through Ten).

Again, plaintiff moved to dismiss. ECF 27. In a Memorandum Opinion (ECF 33) and Order (ECF 34) dated March 31, 2018, I dismissed the third-party defendants from the suit and dismissed the counts asserted in the FAC, with the exception of Count Four.

Now pending is defendants' "Motion to Allow Filing Of Second Amended Counterclaim And Second Amended Third Party Complaint," filed on June 8, 2019. ECF 40. It is supported by a memorandum of law (ECF 40-1) (collectively, the "Motion" or "Motion to Amend") and five exhibits. ECF 40-3 to ECF 40-7. The proposed "Second Amended Counterclaim and Second

---

[2] The case was reassigned to me on November 14, 2018, due to the retirement of Judge Garbis. *See* Docket.

Amended Third-Party Complaint" is docketed at ECF 40-2 (sometimes referred to as "SAC").[3] In particular, defendants seek to reinstate all but one of the third-party defendants. Counterclaimants also seek to revive the fraud claims lodged in Counts One, Two, and Three of the FAC, and to amend the allegations contained in Count Four. *Id.* at 2. And, they seek to increase the amount of damages pleaded in the SAC.

Plaintiff opposes the Motion to Amend on the basis that the proposed amendments are "futile." ECF 41 at 4. Counterclaimants have replied. ECF 42.

No hearing is necessary to resolve the Motion. *See* Local Rule 105(6). For the reasons that follow, I shall grant the Motion to Amend in part and deny it in part.

## I. Procedural Background[4]

As noted, Kiddie Academy initiated the instant suit on November 16, 2017. ECF 1. According to Kiddie, defendants entered into a Franchise Agreement with Kiddie on March 14, 2014, pursuant to which WWL agreed to open and operate a Kiddie franchise for an early childhood learning center in Cedar Park, Texas. *Id.* ¶ 7; ECF 1-1 (Franchise Agreement). As part of the Franchise Agreement, the Sumanths executed a Personal Guaranty, making them personally liable for WWL's obligations. ECF 1, ¶ 7; ECF 1-1 at 63-64 (Personal Guaranty).

Defendants allegedly defaulted on payments owed to Kiddie under the Franchise Agreement. As a result, Kiddie terminated its relationship with defendants on November 14, 2017. ECF 1, ¶ 16; ECF 1-3 (Termination Notice). Nevertheless, defendants have allegedly retained

---

[3] The redlined version is docketed at ECF 40-1.

[4] As the parties are well acquainted with the facts underlying this dispute, and those facts, at least as alleged by defendants, are set forth in my Memorandum Opinion of March 31, 2019 (ECF 33), I shall not re-plow that ground here. The background included here is limited to the facts necessary to resolve the Motion.

Kiddie curricular materials and have continued to use its trademarks, copyright materials, and trade dress. ECF 1, ¶¶ 24-25.

As noted, the Complaint lodges claims for trademark and copyright infringement and breach of the Franchise Agreement and Personal Guaranty. Plaintiff also seeks declaratory relief with respect to the defendants' contractual obligations.

Defendants answered the suit and filed the Counterclaim on March 26, 2018. ECF 22. They lodged claims under Maryland and federal law against Kiddie Academy and nine Kiddie Academy officers. Plaintiff moved to dismiss the Counterclaim on April 16, 2018. ECF 23. By Order of April 27, 2018, Judge Garbis directed defendants to amend the Counterclaim. ECF 24.

On May 7, 2018, defendants filed the FAC (ECF 25) against Kiddie Academy and nine Kiddie officers: Greg Helwig, Kiddie's President and Chief Executive Officer; Lene Steelman, Kiddie's Controller/Vice President ("VP") of Accounting; Joshua Frick, Kiddie's VP of Real Estate; David Gould, Kiddie's former Development Manager; Susan Wise, the Chief Financial Officer and Chief Operating Officer; Kevin Murphy, the VP of Operations; Chris Commarota, the VP of Construction; Anthony F. Malizia, former Construction Manager; and William Huggins, Franchise Business Consultant. *Id.* ¶¶ 6-15.

The FAC contains ten counts. Count One asserts a claim of "(Intentional Misrepresentation) Fraud or Deceit" against Kiddie, Helwig, Steelman, Frick, Gould, Wise, and Murphy. *Id.* ¶¶ 62-67. Count Two sets forth a claim of "(Fraud in the Inducement)" against Kiddie, Helwig, Steelman, Frick, Gould, Wise, and Murphy. *Id.* ¶¶ 68-70. Count Three asserts a claim of "(Intentional Misrepresentation) (Concealment or Non-Disclosure)" against Kiddie, Helwig, Steelman, Frick, Gould, Wise, and Murphy. *Id.* ¶¶ 71-81. In Count Four, counterclaimants assert "Negligent Misrepresentation" against Kiddie, Helwig, Steelman, Frick,

4

Gould, Wise, and Murphy. *Id.* ¶¶ 82-88. Count Five, lodged against Kiddie, Commarota, Malizia, and Huggins, asserts "(Defamation Per Se of a Private Individual) Supriya Sumanth." *Id.* ¶¶ 89-92. Count Six contains a claim of "Detrimental Reliance," filed against Kiddie, Helwig, Steelman, Frick, Gould, Wise, and Murphy. *Id.* ¶¶ 93-96. Counts Seven, Eight, and Nine allege RICO violations under 18 U.S.C. §§ 1961 *et seq.*, against Kiddie, Helwig, Steelman, Frick, Gould, Wise, and Murphy, based on mail fraud and wire fraud. *Id.* ¶¶ 97-114. In Count Ten, also under RICO, counterclaimants allege that Kiddie, Helwig, Steelman, Frick, Gould, Wise, and Murphy conspired to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d). *Id.* ¶¶ 115-20.

Kiddie moved to dismiss the FAC. ECF 27. The motion was supported by a memorandum of law (ECF 21-1) and one exhibit. *See* ECF 27-2 (the Franchise Agreement). Plaintiff argued that the statute of limitations had run on defendants' counterclaims. ECF 27-1 at 13-19. And, Kiddie argued that the FAC failed to state plausible claims. As relevant here, plaintiff contended that the fraud claims lodged in Counts One and Two failed because they did not satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). *Id.* at 19-22. According to plaintiff, Count Three's fraudulent concealment claim also warranted dismissal because defendants failed plausibly to allege the "special relationship required in order to impose a duty on Kiddie Academy to disclose material facts to them." *Id.* at 22. Likewise, plaintiff moved to dismiss the negligent misrepresentation claim raised in Count Four, asserting that it was "based on alleged projections or withholding of information, not affirmative statements." *Id.* at 23. Defendants opposed the motion to dismiss (ECF 30), and Kiddie replied. ECF 31.

By Memorandum Opinion (ECF 33) and Order (ECF 34) of March 31, 2019, I granted in part and denied in part Kiddie's motion to dismiss. As a preliminary matter, I dismissed the claims against the third-party defendants because defendants had failed to effect service, as required by

Fed. R. Civ. P. 4(m).  ECF 33 at 3-4.  Thus, I "consider[ed] the [motion to dismiss] only with regard to the Amended Counterclaim filed by the defendants." *Id.*

On the face of the submission, I was unable to conclude that defendants' claims were barred by limitations. *Id.* at 24-28.  Therefore, I proceeded to examine plaintiff's contention that the FAC failed to state claims under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b).  With the exception of Count Four, I dismissed the counts lodged in the FAC.  ECF 33 at 59.

With respect to Counts One and Two, I observed: "Critically, defendants fail to provide any facts to support the assertions that Kiddie deliberately made statements with the intent to deceive or for the purpose of defrauding the counterclaimants.  *Id.* at 33.  Equally problematic, defendants rooted their fraud claims in "repeated false assurances and predictions," which "are not actionable for fraud, unless defendants plead with sufficient particularity that such statements were knowingly false or 'made with reckless indifference' to their truth and 'made for the purpose of defrauding' them," something defendants "ha[d] not done." *Id.* at 35.  Because defendants failed plausibly to allege that Kiddie Academy intended to deceive them, I granted the motion to dismiss with respect to Count One and Count Two.  *Id.*

I also dismissed Count Three.  I observed that in Maryland, to state a claim of fraudulent concealment, the plaintiff must allege that the defendant had a duty to disclose material facts, which arises only "'in certain relationships such as a confidential or fiduciary relationship.'" *Id.* at 36 (quoting *Hogan v. Md. State Dental Ass'n*, 155 Md. App. 556, 566, 843 A.2d 902, 908 (2004)).  However, I noted that the Franchise Agreement "expressly provided that no fiduciary relationship existed between Kiddie and the counterclaimants," foreclosing defendants' contention that a special relationship existed between them and Kiddie Academy.  ECF 33 at 37.  In addition,

I pointed out that Count Three "fails for the same reasons that the other fraud counts fail," *i.e.*, the paucity of allegations that Kiddie Academy intended to deceive counterclaimants. *Id.*

However, in a generous construction of the FAC, I denied the motion to dismiss Count Four, which contained a claim for negligent misrepresentation. I agreed with Kiddie Academy that predictive or promissory statements cannot give rise to a claim for negligent misrepresentation under Maryland law. *Id.* at 39. But, I concluded that "counterclaimant's allegations [we]re not entirely limited to promises about future performance or conduct." *Id.* at 40. I stated, *id.*:

> For example, they allege that at the training on April 20, 2015, Conley advised them that "the numbers provided to the bank at Kiddie's direction barely met the minimum lending guidelines for approval, and that it was imperative that Defendants receive the support from Kiddie to reach the given projections." ECF 25, ¶ 54. But, when defendants asked Murphy "to see Kiddie's historical numbers,'" Murphy refused to "share this historical information due to 'proprietary reasons.'" *Id.* ¶ 55. Conley allegedly explained to the couple that "due to construction cost overruns and an increase in SBA closing costs that the lender had reduced the requested working capital budget." *Id.* Defendants contend, *id.*: "The cost overruns, the increase in SBA closing costs and the increased time to ramp up to break even were due to Kiddie's intentional or negligent provision of information to Defendants to present to the lender."

Thus, "taking the facts in the light most favorable to counterclaimants, I [was] satisfied that counterclaimants' allegations [we]re sufficient to state a plausible claim of negligent misrepresentation." *Id.*

The Court issued a Scheduling Order, pursuant to Local Rule 103.9, on May 10, 2019. ECF 39. The Order set a deadline of June 10, 2019, for joining additional parties and amending pleadings. *Id.* at 1.

On June 8, 2019, defendants filed the instant Motion to Amend. ECF 40. Defendants seek to reinstate eight of the nine third-party defendants. *Id.* at 1-2.[5] According to the counterclaimants,

---

[5] Without explanation, defendants state in the Motion that they "have decided not to pursue" claims against William Higgins. ECF 40 at 2.

their failure to serve the third-party defendants "was due to [their] decision to await the ruling on the motion to dismiss . . . before trying to serve the third-party defendants, having chosen first to follow the procedures in Federal Rule of Civil Procedure 4(d)." *Id.* at 1. They maintain that "[t]he claims against the third-party defendants still survive on the merits[.]" *Id.* at 2. And, as noted, they seek to reinstate Counts One, Two, and Three, and to amend Count Four.

Further, defendants seek to amplify many of the factual allegations in the SAC. *See* ECF 40-1, ¶ 14 (adding that defendants lacked experience operating childcare centers, but "Kiddie's marketing department stated that owner operators of its franchises did not need any training or experience"); *id.* ¶ 33 (alleging that defendants would not have signed the Franchise Agreement, relocated to Texas, or built the center "if they had known . . . false information was provided as to expenses, income, enrollment and lack of local marketing by Kiddie"); *id.* ¶ 36 (adding that "Kiddie deliberately misrepresented the facts to Defendants in order to get them to buy their Kiddie Academy franchise and ultimately obtain financing to construct and operate their Kiddie Academy childcare center"); *id.* ¶ 42 (alleging that "Kiddie's Site Analysis was not accurate" because it "failed to accurately consider the competition and the necessary demographic data including income levels of the residents of the area"); *id.* ¶ 44 ("Defendants would not have paid the second installment of their franchise fees on March 14, 2014 if they had known about the fallacies in Kiddie's Site Analysis."); *id.* ¶ 46 (alleging that Kiddie "knew" defendants' loan application to Evolve Bank "was not realistic"); *id.* ¶ 47 (pleading that defendants invested in their franchise based on "deliberate misstatements of material facts and omission of material facts").

Defendants contend that the SAC is not merely a new gloss on old facts. The SAC also contains six new paragraphs of factual allegations. *Id.* ¶¶ 21-27. Defendants allege that Steelman

"provided false proformas [sic]" to the Sumanths on May 9, 2011. *Id.* ¶ 21. According to

defendants, Kiddie and Steelman knew the pro formas were "deliberately false" because they, *id.*,

> "overestimated tuition revenue and underestimated expenses significantly, improperly called for the state minimum number of teachers when she and Kiddie knew that more teachers were needed to operate the Kiddie Academy child care centers than was required by the State of Texas, they did not include credit card processing expenses which can run over 3% when Kiddie encourages its franchisees to take credit and debit card payment, they did not include the costs of a splash pad needed in Texas to compete in the market due to the hot weather, they did not include the costs of required child sized toilets suitable for preschool age children and underestimated design and architect costs which they knew were higher than listed on the proformas thereby ultimately leading to cost overruns running over $250,000 to $500,000 for most new centers, and, they overestimated initial enrollments which Kiddie knew were much higher than historical averages for new Kiddie Academy childcare centers.

According to defendants, Lisa Conley, Kiddie's former Finance Manager, told Steelman

and Wise that defendants' pro formas were not realistic, and they allegedly "laughed." *Id.* ¶ 22.

Steelman allegedly sent defendants revised pro formas on June 19, 2013, but these were "not

realistic," and were "missing key cost elements." *Id.* ¶ 24. The pro formas also "greatly

overestimated the expected enrollment which Kiddie knew would be lower based on its records of

historical averages for new centers." *Id.* Defendants allege that Kiddie "encouraged" the

Sumanths to construct a new building to serve as their childcare center, knowing that the debt

incurred to finance the construction would prevent their franchise from turning a profit. *Id.* ¶ 25.

Further, defendants allege that when Evolve Bank rejected their loan application, Kiddie

sent the Sumanths an email "blam[ing] the bank[.]" *Id.* ¶ 27. In their view, "[t]he effect of this e-

mail was to deceive Defendants into believing that they had good business prospects, when Kiddie

in fact knew that the loan, even using 'the best' case numbers[,] was highly questionable." *Id.*

With respect to Count Three, defendants now aver that a special relationship existed

between defendants and Kiddie Academy. *Id.* ¶ 81. Specifically, they assert, *id.*:

While no fiduciary relationship existed, a confidential relationship arose between the parties by reason of the knowing dependence of Defendants on Kiddie and third-party defendants' claimed expertise and by their affirmative representations that the Defendants could depend on them to tell them everything they needed to know to design, construct, open and operate their Kiddie Academy childcare center and to make the representations made by Kiddie and third-party defendants to Defendants described herein not misleading. Kiddie and third-party defendants had influence and superiority over Defendants by reason of their decades of experience in operating childcare centers. Moreover, Defendants' status as immigrants unfamiliar with American culture and unfamiliar with franchising left them wholly dependent on Kiddie and third-party defendants to disclose all material facts to them.

Besides amending the counterclaims, defendants seek to increase the amount of damages alleged in the Second Amended Counterclaim from $3 million to $4 million. *Id.* ¶¶ 70, 75, 87, 95. And, the Motion to Amend asks the Court to award defendants attorney's fees and costs for the expenses they will incur in serving the third-party defendants. ECF 40 at 3.

The Motion is supported by two exhibits: an affidavit from Conley (ECF 40-3), and an email from Frick to Ms. Sumanth, dated March 24, 2014. ECF 40-4. Both exhibits are referenced in the proposed Second Amended Counterclaim. *See* ECF 40-1, ¶ 21 (citing ECF 40-3); *id.* ¶ 24 (citing ECF 40-4).

Additional facts are included in the Discussion.

## II. Legal Standards

### A. Rule 15

Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings. A complaint may be amended "once as a matter of course" within twenty-one days of service of a defendant's answer or Rule 12(b), (e), or (f) motion, "whichever is earlier." Fed. R. Civ. P. 15(a)(1)(b). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Notably, Rule 15(a)(2) states, in part: "The court should freely give leave [to amend] when justice so requires." *Id.*; *see also Foman*

*v. Davis*, 371 U.S. 178, 182 (1962); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011). Therefore, Rule 15(a) confers "broad discretion" on the district court "concerning motions to amend pleadings." *Booth v. Maryland*, 337 F. App'x 301, 312 (4th Cir. 2009) (per curiam); *see Laber v. Harvey*, 438 F.3d 404, 426-29 (4th Cir. 2006) (en banc).

There are three circumstances when it is appropriate to deny leave to amend: "(1) 'the amendment would be prejudicial to the opposing party;' (2) 'there has been bad faith on the part of the moving party;' or (3) 'the amendment would have been futile.'" *Scott v. Family Dollar Stores, Inc*., 733 F.3d 105, 121 (4th Cir. 2013) (quoting *Laber*, 438 F.3d at 426).

"Perhaps the most important factor listed by the [Supreme] Court for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter a pleading." 6C. Wright & A. Miller, Federal Practice And Procedure § 1487 (3d ed.) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971); *United States v. Hougham*, 364 U.S. 310 (1960)). The burden of showing prejudice falls on "the party opposing amendment." *Atl. Bulk Carrier Corp. v. Milan Exp. Co.*, 3:10-cv-103, 2010 WL 2929612, at *4 (E.D. Va. July 23, 2010). "[I]f the court is persuaded that no prejudice will accrue, the amendment should be allowed." Wright & Miller, § 1487.

In *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 439 (4th Cir. 2011), the Court said: "'Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing . . . [T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant . . . .'" (quoting *Laber*, 438 F.3d at 427) (alteration in *Laber*). To be sure, "prejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party, but that basis for a finding of prejudice essentially

applies where the amendment is offered shortly before or during trial." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). In contrast, "[a]n amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Laber*, 438 F.3d at 427 (emphasis added). Therefore, the court must examine the facts of each case "to determine if the threat of prejudice is sufficient to justify denying leave to amend." WRIGHT & MILLER, § 1487.

Furthermore, a proposed amendment must not be futile. *See Foman*, 371 U.S. at 182; *see also U.S. ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 n.6 (4th Cir. 2017). According to the Fourth Circuit, a proposed amendment should be denied as futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510; *see also* WRIGHT & MILLER § 1487 ("[A] proposed amendment that clearly is frivolous, advancing a claim or defense that is legally insufficient on its face,[] or that fails to include allegations to cure defects in the original pleading,[] should be denied."). A motion to amend may also be futile where the proposed amendment "could not withstand a motion to dismiss." *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995); *see also Devil's Advocate, LLC v. Zurich Am. Ins. Co.*, 666 F. App'x. 256, 267 (4th Cir. 2016) (per curiam) (affirming district court's denial of leave to amend on the basis of futility, because the amended complaint would not survive a motion to dismiss under Rule 12(b)(6)); *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) ("[A] district court may deny leave if amending the complaint would be futile—that is, 'if the proposed amended complaint fails to satisfy the requirements of the federal rules.'" (citation omitted)); *Frank K. McDermott, Ltd v. Moretz*, 898 F.2d 418, 420-21 (4th Cir. 1990) ("There is no error in disallowing an amendment when the claim sought to be pleaded by amendment plainly would be subject to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).").

But, the review for futility "is not equivalent to an evaluation of the underlying merits of the case. To the contrary, '[u]nless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment.'" *Next Generation Grp., LLC v. Sylvan Learning Ctrs., LLC*, CCB-11-0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)).

In addition, a district court may deny a motion to amend for reasons "'such as undue delay . . . [or] repeated failure to cure deficiencies by amendments previously allowed[.]'" *Booth*, 337 F. App'x at 312 (quoting *Foman*, 371 U.S. at 182). However, "[d]elay alone is an insufficient reason to deny leave to amend." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999). "Rather, the delay must be accompanied by prejudice, bad faith, or futility." *Id.* (citation omitted); *see Simmons*, 634 F.3d at 769; *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010).

### B. Rule 9(b)

To the extent that counterclaimants seek to reinstate their fraud claims, Fed. R. Civ. P. 9(b) is pertinent. Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

As a preliminary matter, claims that sound in fraud, whether rooted in common law or arising under a statute, implicate the heightened pleading standard of Fed. R. Civ. P. 9(b). *See, e.g.*, *E-Shops Corp. v. U.S. Bank N.A.*, 678 F.3d 659, 665 (8th Cir. 2012) ("Rule 9(b)'s heightened pleading requirement also applies to statutory fraud claims."); *see also Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (stating that an MCPA claim that "sounds in fraud[] is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)").

Under the rule, a claim that sounds in fraud "'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *U.S. ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010) (citation omitted). In other words, "'Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Crest Construction II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (citation omitted).

Rule 9(b) serves several salutary purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of.... Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted).

However, by its plain text, Rule 9(b) permits general averment of aspects of fraud that relate to a defendant's state of mind. And, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.* Moreover, Rule 9(b) is "less strictly applied with respect to claims of fraud by concealment" or omission of material facts, as opposed to affirmative misrepresentations, because "an omission 'cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.'" *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md.

1997) (quoting *Flynn v. Everything Yogurt*, HAR-92-3421, 1993 WL 454355, at *9 (D. Md. Sept. 14, 1993)).

### III.  Discussion

### A.  Counts One and Two

As mentioned, defendants ask the Court for leave to reinstate their claims for "(Intentional Misrepresentation) Fraud or Deceit" and "(Fraud in the Inducement)," lodged in Counts One and Two, respectively. *See* ECF 40 at 2; ECF 40-1 at 20-22.  Plaintiff opposes these amendments, asserting that "none of the additional allegations [in the SAC] address the crucial deficiencies in Defendants' last pleading, which the Court's Memorandum identified[.]"  ECF 41 at 13.

Under Maryland law, "'[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'"  *Sass v. Andrew,* 152 Md. App. 406, 432, 832 A.2d 247, 261 (2003) (citation omitted).  Such claims implicate the heightened pleading standard of Fed. R. Civ. P. 9(b). *See*, *e.g.*, *First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d at 731.  And, at trial the plaintiff must establish the elements of fraud "by clear and convincing evidence."  *Md. Envir. Trust v. Gaynor*, 370 Md. 89, 97, 803 A.2d 512, 516 (2002).

In an action for intentional or fraudulent misrepresentation, which is the garden variety of fraud and is often described simply as "fraud," the plaintiff ordinarily must show:

> 1) that the defendant made a false representation to the plaintiff;
> 2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth;
> 3) that the misrepresentation was made for the purpose of defrauding the plaintiff;
> 4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and
> 5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Nails v. S & R, Inc.*, 334 Md. 398, 415, 639 A.2d 660, 668 (1994); *accord Thomas v. Nadel*, 427

Md. 441, 451 n.18, 48 A.3d 276, 282 n.18 (2012); *Gourdine v. Crews*, 405 Md. 722, 758, 955 A.2d 769, 791 (2008); *Sass*, 152 Md. App. at 429, 832 A.2d at 260.

Additionally, "a cause of action for fraud" has "a strict requirement of scienter." *First Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md. App. 97, 147, 838 A.2d 404, 433 (2003). "Recovery in a tort action for fraud or deceit in Maryland is based upon a defendant's deliberate intent to deceive." *Id.*; *see VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 704, 715 A.2d 188 (1998); *Sass*, 152 Md. App. at 430, 82 A.2d at 260.

To be actionable, a false representation "must be of a material fact." *Gross v. Sussex, Inc.*, 332 Md. 247, 258, 630 A.2d 1156, 1161 (1993). "A 'material' fact is one on which a reasonable person would rely in making a decision," *Sass*, 152 Md. App. at 430, 832 A.2d at 260, or a fact that "'the maker of the misrepresentation knows . . . [the] recipient is likely to regard . . . as important.'" *Gross*, 332 Md. at 258, 630 A.2d at 1161 (citation omitted). And, the defendant must "know[ ] that his representation is false" or be "recklessly indifferent in the sense that he knows that he lacks knowledge as to its truth or falsity." *Ellerin v. Fairfax Savings, F.S.B.*, 337 Md. 216, 232, 652 A.2d 1117 (1995).

"The tort of fraudulent inducement 'means that one has been led by another's guile, surreptitiousness or other form of deceit to enter into an agreement to his detriment.'" *Rozen v. Greenberg*, 165 Md. App. 665, 674, 886 A.2d 924, 929 (2005) (quoting *Sec. Constr. Co. v. Maietta*, 25 Md. App. 303, 307, 334 A.2d 133, 136 (1975)). "In fraudulent inducement cases, a defrauded party may elect between two remedies, which are exclusive." Paul Mark Sandler & James K. Archibald, *Pleading Causes of Action in Maryland* § 3.92, at 346 (5th ed. 2013). "Persons who discover that they have been induced into a contract by fraud must decide, or the law will decide for them, whether unilaterally to rescind the contract or to ratify the contract and

seek damages, either affirmatively or by recoupment." *Sonnenberg v. Sec. Mgmt. Corp.*, 325 Md. 117, 127, 599 A.2d 820, 823 (1992).

Notably, fraud generally cannot be predicated on statements that are merely "'expressions as to what will happen in the future.'" *Sass*, 152 Md. App. at 438, 832 A.2d at 265 (quoting *Levin v. Singer*, 227 Md. 47, 63, 175 A.2d 423, 432 (1961)); *see Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987); *Highlands Office Park Three, LLC v. GE Commercial Fin. Bus. Prop. Corp.*, WDQ-08-2972, 2009 WL 10682225, at *4, n.7 (D. Md. Feb. 25, 2009); *Cooper v. Berkshire Life Ins. Co.*, 148 Md. App. 41, 73, 810 A.2d 1045, 1064 (2002). That said, "a promissory representation . . . 'made with an existing intention not to perform is actionable for fraud.'" *Learning Works*, Inc., 830 F.2d at 546 (citation omitted); *see also Gooden v. Wells Fargo Home Mortg.*, AW-08-2521, 2010 WL 1068119, *4 (D. Md. Mar. 17, 2010); *Orteck Int'l Inc. v. TransPacific Tire & Wheel, Inc.*, DKC-05-2882, 2006 WL 2572474, *11 (D. Md. Sept. 5, 2006); *Sass*, 152 Md. App. at 436, 832 A.2d at 264; *Parker v. Columbia Bank*, 91 Md. App. 346, 360-61, 604 A.2d 521, 528 (1992) (same). Therefore, "[s]imply because a statement concerns an event that may occur in the future does not preclude liability based on fraud." *Aloi v. Moroso Inv. Partners, LLC*, DKC-11-2591, 2012 WL 4341741, at *4 (D. Md. Sept. 20, 2012); *see Bagel Enter., Inc. v. Baskin & Sears*, 56 Md. App. 184, 203, 467 A.2d 533, 542-43 (1983) ("Maryland recognizes an action for fraud based on fraudulent representations of future intentions.").

As indicated, Maryland courts have recognized that "a promise made to induce another to execute a contract, which the promisor never intended to perform, may create liability for fraud." *Sass*, 152 Md. App. at 432, 832 A.2d at 262 (citing *Councill v. Sun Ins. Office*, 146 Md. 137, 150, 126 A. 229, 234 (1924)). It follows that "an action for fraud may not be dismissed on this basis if the alleged fraud is based on a defendant's promise that is made with the present intention not to

perform that promise." *Aloi*, 2012 WL 4341741, at *4 (citing *Sass*, 152 Md. App. at 436, 832 A.2d at 264). On the other hand, the "failure to fulfill a promise is merely a breach of contract." *Kerr v. Johns Hopkins Univ.*, L-10-3294, 2011 WL 4072437, at *7 (D. Md. Sept. 12, 2011) (quoting *Sass*, 152 Md. App. at 438, 832 A.2d at 265), *aff'd*, 473 F. App'x 246 (4th Cir. 2012), *cert. denied*, 568 U.S. 1124 (2013).

Thus, Maryland cases distinguish "between statements that are 'a prediction or an expression of expectation concerning external events' and those that are 'relate[d] to matters within the speaker's control.'" *Carroll Co. v. Sherwin-Williams Co.*, 848 F. Supp. 2d 557, 569 (D. Md. 2012) (quoting *Gross*, 332 Md. at 272, 630 A.2d at 1169) (alteration in *Carroll*). Therefore, a predictive statement by a speaker who holds himself out as "knowledgeable in a particular field" can support a claim of fraud "where the circumstances indicate . . . that the speaker has a factual basis for his predictions so that the existence of facts is implied by the representations." *Cooper*, 148 Md. App. at 73-74, 810 A.2d at 1064 (citation omitted); *see also Hale Trucks of Md., LLC v. Volvo Trucks North Am., Inc*. 224 F. Supp. 2d 1010, 1031-32 (D. Md. 2002).

In the SAC, defendants allege that Kiddie "asserted false material facts . . . in order to induce [the Sumanths] to sign a Franchise Agreement with it and to further induce them to invest additional monies and obtain financing to construct and operate a Kiddie Academy childcare center." ECF 40-1, ¶ 66. These "false material facts" include Kiddie's promise to assist defendants in "designing and constructing the center, choosing a Director for the center, preparing proformas to obtain financing to construct and operate a childcare center, deciding on an appropriate location for the center, hiring staff for the center[,] and managing the center." *Id.* ¶ 70. Kiddie also allegedly provided defendants with pro formas that it knew underestimated or overlooked certain costs associated with starting a Kiddie childhood learning center and overestimated initial

enrollment. *Id.* ¶¶ 21, 24.  And, defendants allege that Kiddie made false representations about its efforts to research "the market [for defendants'] location" and "what was necessary for them to successfully compete in Texas and in the childcare industry as a whole[.]"  *Id.* ¶ 70.

In dismissing Counts One and Two, I observed that defendants' fraud claims were primarily predicated on "repeated false assurances and predictions," which meant that they had to allege facts showing Kiddie acted with an intent to defraud in order to state plausible fraud claims. ECF 33 at 35.  After scrutinizing the factual allegations contained in the FAC, I determined that it "fail[ed] to provide any facts to support the assertion that Kiddie deliberately made statements with the intent to deceive or for the purpose of defrauding the counterclaimants." *Id.* at 33.  There, I observed that the absence of such allegations was unsurprising because it would make little sense for Kiddie to have sabotaged its own franchisee. *Id.* at 35.

Defendants' fraud claims remain rooted in allegedly false promises and predictions, all of which were raised in the FAC.  Indeed, while the SAC describes the deficiencies in the pro formas and site analysis in more granularity, these inaccuracies were set forth in the First Amended Counterclaim. *Compare* ECF 25, ¶¶ 21, 38, 65, 77, 80, 85 *with* ECF 40-1, ¶¶ 21, 33, 42.  So too was the allegedly misleading email from Frick to the Sumanths accusing Evolve Bank of failing to do its homework. *Compare* ECF 25, ¶ 44 *with* ECF 40-1, ¶ 48.  Nor is there anything new in defendants' allegations that Kiddie falsely assured them that it would provide operational support. *Compare* ECF 25, ¶¶ 24, 25, 26, 27, 28, 32, 56 *with* ECF 40-1, ¶¶ 14, 28, 29, 32, 36, 60.

Thus, as with the First Amended Counterclaim, the fraud claims lodged in the SAC are plausible only if "defendants plead with sufficient particularity that such statements were knowingly false or 'made with reckless indifference' to their truth and 'made for the purpose of defrauding' them." ECF 33 at 35.  However, defendants offer no specific factual allegations in

the SAC to support the inference that Kiddie acted with the purpose of defrauding them. For example, the FAC alleged: "Kiddie's statement to Defendants that Evolve Bank had done insufficient research was not true. Kiddie knew it was not true and misrepresented the reason for Evolve Bank's rejection of the site." ECF 25, ¶ 44. Defendants now seek to allege that Kiddie "blamed" Evolve Bank in order "to deceive Defendants further into believing that they had good business prospects, when Kiddie in fact knew that the loan . . was highly questionable." ECF 40-1, ¶ 27. But, inserting conclusory language that plaintiff acted "to deceive" does not nudge defendants fraud claims from conceivable to plausible.

Nor does Conley's affidavit, ECF 40-3, support an inference of fraud. Conley states that Kiddie "plays" with data and "us[es] unrealistic projections so that banks will lend money to the franchisees." *Id.* ¶ 11. She also states that she repeatedly expressed concern about defendants' pro formas and franchise plans with other Kiddie employees. *See, e.g.*, *id.* ¶ 10, ¶ 22. But nowhere does Conley suggest that Kiddie intended to defraud defendants. If anything, her statements suggest that plaintiff acted negligently, not with an intent to deceive. *See id.* ¶ 16 (commenting that "Kiddie often makes lots of mistakes during the construction phase").

I previously dismissed Counts One and Two of the First Amended Counterclaim because defendants failed to allege that Kiddie made false statements with the intent to deceive. ECF 33 at 35. This fatal defect remains in the SAC. Accordingly, I shall deny defendants' Motion to Amend with respect to Counts One and Two.

## B. Count Three

Defendants request to revive Count Three, "(Intentional Misrepresentation) (Concealment or Non-Disclosure)." In Maryland, to state a claim for fraudulent concealment, the plaintiff must allege:

(1) the defendant owed a duty to the plaintiff to disclose a material fact;
(2) the defendant failed to disclose that fact;
(3) the defendant intended to defraud or deceive the plaintiff;
(4) the plaintiff took action in justifiable reliance on the concealment; and
(5) the plaintiff suffered damages as a result of the defendant's concealment.

*Blondell v. Littlepage*, 413 Md. 96, 119, 991 A.2d 80, 94 (2010); *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 138, 916 A.2d 257, 274 (2007); *Green v. H & R Block, Inc.*, 355 Md. 488, 525, 735 A.2d 1039, 1059 (1999).

In *Lubore v. RPM Assocs., Inc.*, 109 Md. App. 312, 330, 674 A.2d 547, 556 (1996), the Maryland Court of Special Appeals said: "One who conceals facts that materially qualify affirmative representations may be liable for fraud." But, non-disclosure ordinarily "does not constitute fraud unless there exists a duty of disclosure." *Frederick Road, supra*, 360 Md. at 100 n. 14, 756 A.2d at 976 n. 14 (2000). Maryland courts have determined that a duty to disclose "arises in certain relationships such as a confidential or fiduciary relationship." *Hogan v. Md. State Dental Ass'n*, 155 Md. App. 556, 566, 843 A.2d 902, 908 (2004); *see also Impala Platinum, Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 323-24, 389 A.2d 887 (1978) (finding a duty to disclose based on a fiduciary relationship); *Finch v. Hughes Aircraft Co.,* 57 Md. App. 190, 239, 469 A.2d 867 (1984) (finding a duty to disclose based on a confidential relationship).

"To be sure, a confidential relationship may exist in a business relationship. Certain factors above and beyond a typical business relationship must exist, however." *Brass Metal Prods., Inc., v. E-J Enters., Inc.*, 189 Md. App. 310, 357, 984 A.2d 361, 388 (2009) (citation omitted). The Maryland Court of Special Appeals added, *id.* at 357-58, 984 A.2d at 389: "'For example, a confidential relationship may exist when there is a relationship independent of the business relationship. . . . Additionally, a confidential relationship may exist in a business relationship if

'confidences are reposed by one person in another, who as a result gains an influence and superiority over him.'"

Count Three of the SAC alleges that Kiddie "intentionally failed to disclose . . . material facts" so as to "induce them to sign the franchise agreement with Kiddie," "select the location for their Kiddie Academy childcare center," and "borrow[] money to design, construct, and operate their Kiddie Academy childcare center." ECF 40-1, ¶ 77. As with the First Amended Counterclaim, defendants allege that Kiddie "fail[ed] to disclose material information," including "expected enrollment, realistic operating costs, statistics and projections of what was needed to become a successful profitable Kiddie Academy franchise[.]" *Id*. ¶ 82. But, defendants now allege existence of a "confidential relationship[.]" *Id.* ¶ 81. In particular, defendants state that their "status as immigrants unfamiliar with American culture and with franchising left them wholly dependent on Kiddie and third-party defendants to disclose all material facts to them." *Id.*

Kiddie argues that these allegations "still describe[] only an arms-length business transaction," not a confidential relationship. ECF 41 at 15. According to plaintiff, counterclaimants' lack of experience in franchising or childcare is of no moment because "[a] mere experience gap between two parties in a specific area does not suggest that the less experienced party has divulged confidences that give the more experienced party power." *Id.* at 16. Defendants aver that plaintiff's argument is "wrong," but offer no support for this contention. ECF 42 at 8.

The conclusory assertion that defendants lacked familiarity with "American culture" and franchising does not, in and of itself, plausibly allege a confidential relationship that can support a claim for fraudulent concealment. The SAC is devoid of facts that indicate that the Sumanths were "wholly dependent" on Kiddie for information. There are no allegations detailing how long the Sumanths have lived in the United States, their educational background, or their business

experience or lack thereof.  Furthermore, the SAC fails to allege that the information defendants apparently relied on Kiddie to disclose could not have been obtained elsewhere.  Many of Kiddie's alleged misrepresentations—for example, the number of teachers required by Texas law, the desirability of a splash pad, or the cost-benefit analysis of constructing a building versus buying an existing one—appear to be things that the Sumanths could easily have verified.  There is no basis to assume that they were unable to investigate these matters or exercise due diligence.

In any event, as with the First Amended Complaint, Count Three also "fails for the same reasons that the other fraud counts fail."  ECF 33 at 37.  That is, Count Three lacks factual allegations suggesting that Kiddie withheld material facts from defendants with the intent to defraud them.  Thus, the Motion to Amend is denied as to Count Three.

### C.  Count Four

Defendants seek to add additional allegations to Count Four, which asserts a claim for negligent misrepresentation.  ECF 40 at 26.  The FAC alleges that Kiddie owed defendants a duty of care to provide accurate information "necessary for Defendants to make a decision as to whether to purchase the Kiddie Academy franchise," ECF 25, ¶ 84, but that Kiddie "asserted false material facts, and failed to disclose other material facts known to them . . . to induce Defendants to sign the franchise agreement with Kiddie."  *Id.* ¶ 83.  Defendants seek to add to those allegations, asserting that Kiddie's duty to provide accurate information extended to their decisions "as to whether to purchase the Kiddie Academy franchise, to relocate to Texas, to open a Kiddie Academy childcare center in Cedar Park, Texas, to borrow money from a lender and to design, construct and operate a Kiddie Academy childcare center."  ECF 40-1, ¶ 90.  And, Kiddie allegedly breached that duty to induce defendants not only to sign the franchise agreement but also to induce them "to choose the location in Cedar Park, Texas to construct, open and operate their Kiddie

Academy childcare center, and to expend and borrow funds for said center." *Id.* ¶ 89. Defendants also seek to add a paragraph to Count Four alleging: "At each stage, Defendants invested additional time and financial resources based on the continuing misrepresentations, and omissions of material fact by Kiddie and third-party defendants as detailed above and suffered further losses and damages." *Id.* ¶ 91.

According to plaintiff, "[i]t is unclear whether, with their proposed amendments, Defendants intend to reinforce or broaden their negligent misrepresentation claim beyond the narrow scope that the Court permitted to proceed." ECF 41 at 16. However, Kiddie opposes any efforts by defendants to expand Count Four to include representations about future conduct. *Id.* at 17.

In my view, the proposed amendments to Count Four do not purport to assert that Kiddie is liable for negligent misrepresentation for making predictions or promises. Indeed, such amendments would be futile because, as I explained in my prior Memorandum Opinion, promissory statements and predictions cannot serve as the basis of a negligent misrepresentation claim. *See* ECF 33 at 39-40. On the contrary, I read the proposed amendments as alleging only that Kiddie had a duty to speak truthfully throughout the relationship, and that Kiddie's false statements induced defendants not only to sign the franchise location, but also to make other business decisions, including selecting Cedar Park, Texas as the location for their franchise and their decision to construct a new building, rather than purchase an existing one. In other words, the proposed language clarifies the effect of defendants' negligent misrepresentations; it does not expand the claim.

Therefore, keeping in mind Rule 15's instruction that "court[s] should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), I will permit defendants to amend Count Four.[6]

### D. Damages

In the Motion to Amend, defendants seek leave to increase the amount of damages alleged under each claim from three to four million dollars. ECF 40 at 3; *see* ECF 40-1, ¶ 95 (increasing damages pleaded in Count Four). Plaintiff contests this change, asserting that "there are no new facts or explanation provided to explicate th[is] sharp increase (or even any increased at all) . . . ." ECF 41 at 10.

Although "leave to amend is not automatically granted," *Deasy v. Hill*, 833 F.2d 38, 40, (4th Cir. 1987), "court[s] should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). As noted, I denied plaintiff's motion to dismiss defendants' claim for negligent misrepresentation. *See* ECF 33 at 40. Therefore, to the extent that defendants have a credible basis to increase their request for compensatory damages in Count Four, the Motion to Amend should be granted. *See Ayele v. Wash. Adventist Hosp.*, DKC-16-3778, 2017 WL 3868519, at *2 (D. Md. Sept. 5, 2017) (permitting plaintiff to amend complaint to increase the amount of damages claimed based on new factual averments); *see also Mesa Safe Co., Inc. v. Amazon.com Servs., Inc.*, 18-1247 JVS (ADSx), 2019 WL 4316511, at *4-5 (C.D. Cal. June 5, 2019) (allowing plaintiff leave to amend pleadings to increase its damages figure based on evidence unearthed during discovery and defendant would suffer no prejudice from the amendment).

Counterclaimants object to plaintiff's characterizing their damages amount as unsupported. ECF 42 at 9. They aver that they provided plaintiff a detailed accounting of their losses during

---

[6] On October 18, 2019, plaintiff moved for summary judgment with respect to defendants' negligent misrepresentation counterclaim. ECF 49. Defendants oppose the motion (ECF 58), and plaintiff has replied. ECF 62. I express no opinion as to the merits of that motion.

discovery. And, they explain that the increase in damages is "due to a more calculated analysis of [their] losses as broken down by category." *Id.* at 10. Specifically, they allege that $2,981,000.00 remains outstanding on the bank loan defendants obtained to fund their Kiddie childcare center. *Id.* at 9. And, they estimate that the Sumanths' personal expenditures in pursuit of the franchise, lost income, and attorney's fees amount to $2,420,343. *Id.* In total, counterclaimants maintain they have calculated a loss of $5,401,343.00. *Id.*

Counterclaimants are not adding a new category of damages, but rather refining their prior estimate. And, their damages calculations do not appear to be unfounded. Regardless, because they must prove the extent of any damages they have suffered, plaintiff will suffer no prejudice if the Court allows this change in the pleadings. Thus, I shall grant defendants' request to increase to $4 million the damages sought in Count Four of the SAC.

### E. The Third-Party Defendants

In the Motion to Amend, defendants ask for leave to file suit against eight of the nine Kiddie officers who were previously named as third-defendants in the First Amended Counterclaim. ECF 40 at 1-2. With regard to Count Four, counterclaimants seek to add Helwig, Steelman, Frick, Gould, Wise, and Murphy as third-party defendants. ECF 40-1, ¶ 95.

Plaintiff counters that the inclusion of the third-party defendants is futile. Kiddie asserts that only Steelman and Murphy are implicated in Count Four—Steelman for providing the Sumanths with allegedly false pro formas, and Murphy for refusing to give defendants historical information. ECF 41 at 18. But, according to plaintiff, the allegations in the SAC are "insufficient to state liability against the two employees implicated by the narrow allegations that have survived on Defendants' negligent misrepresentation counterclaim." *Id*. In addition, they aver that Steelman is immune from liability because only members and managers of limited liability

companies can be held liable for torts that they personally committed, yet defendants seek to sue Steelman in her capacity as an employee. *Id.* at 19 (citing *Allen v. Dackman*, 413 Md. 132, 991 A.3d 1216 (2009)).

As a preliminary matter, the proposed third-party defendants are not immune from suit. To be sure, it is well settled that "[a] corporation exists as a legal entity separate and distinct from its corporate shareholders." *Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044, 1047 (4th Cir. 1988); *see Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980 (4th Cir. 1987). Under Maryland law, a limited liability company ("LLC") is likewise distinct from its members. Md. Code (2014 Repl. Vol., 2016 Supp.), § 4A-301 of the Corporations & Associations Article (providing that, generally, "no member [of a LLC] shall be personally liable for the obligations of the limited liability company, whether arising in contract, tort or otherwise, solely by reason of being a member of the limited liability company"); *see Dackman*, 413 Md. at 158, 991 A.2d at 1228 ("[A] member of an LLC generally is not liable for torts committed by, or contractual obligations acquired by, the LLC.").

The concept of a corporation as a separate legal entity "is expressed by the colorful metaphor of the corporate veil, which presumes that acts of the corporation are not acts of the shareholder." *Johnson*, 814 F.2d at 980. The corporate veil doctrine "is a basic attribute of the corporate form; it encourages business investment and fosters stability in commercial transactions." *Cancun Adventure*, 862 F.2d at 1047.

In *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 309, 340 A.2d 225, 234 (1975), the Maryland Court of Appeals observed that, in the absence of fraud or unless necessary to enforce a paramount equity, shareholders are generally not liable for the acts of a corporation. It said, *id.* at 310, 340 A.2d at 234:

The most frequently enunciated rule in Maryland is that although courts will, in a proper case, disregard the corporate entity and deal with substance rather than form, as though a corporation did not exist, shareholders generally are not held individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud or enforce a paramount equity.

In *Cancun Adventure*, 862 F.2d at 1047, the Fourth Circuit recognized that "[s]ubstantial ownership of a corporation by a single individual is not alone sufficient to pierce the corporate veil." Although the *Cancun* Court acknowledged that the corporate veil "is not sacrosanct," it cautioned that "[a] court's power to pierce the corporate veil and impose liability on a shareholder in his individual capacity [must] be exercised with extreme circumspection." *Id.*

A party may seek to pierce the corporate veil when "'necessary to prevent fraud or enforce a paramount equity.'" *Hildreth v. Tidewater Equip. Co., Inc.*, 378 Md. 724, 733, 838 A.2d 1204, 1209 (2003) (citations omitted). But, in Maryland "the fiction of the wholly separate corporate form is jealously guarded . . . ." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 552 (D. Md. 2011). Indeed, "Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce a corporation's veil." *Residential Warranty Corp.*, 126 Md. App. at 309, 728 A.2d at 790-91; *accord Whitmore v. Hawkins*, 217 F.3d 8463 at *4 (4th Cir. 2000) (table).

Notably, the "[p]ower to pierce the corporate veil is to be exercised 'reluctantly' and 'cautiously,'" *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Co.*, 540 F.2d 681, 683 (4th Cir. 1976) (citation omitted), and the challenge facing a party seeking to pierce the corporate veil has been described as "herculean." *Dixon v. Process Corp.*, 38 Md. App. 644, 645-46, 382 A.2d 893, 894-95 (1978) ("A commercial corporation is a legal entity conceived by the mind of man and legitimated by statute for the avowed purpose of achieving maximum profit with a minimum exposure to liability[] . . . [W]oe unto the creditor who seeks to rip away the corporate façade[.]"). Indeed, to this Court's knowledge, no Maryland appellate court has issued a reported opinion

allowing veil piercing to enforce a "paramount equity." *See Ramlall v. Mobile Pro Corp.*, 202 Md. App. 20, 30, 30 A.3d 1003, 1009 (2011). Even where a party seeks to hold a shareholder liable for conduct that was "clearly designed to cause the corporation to evade a legal obligation" and "had the effect of rendering [the corporation] 'all but insolvent,'" paramount equity does not justify piercing the veil. *Hildreth*, 378 Md. at 738-39, 838 A.2d at 1212-13 (quoting *Bart Arconti*, 275 Md. at 305, 340 A.2d at 231).

Maryland courts have "recognized the availability of an action to disregard a limited liability entity congruent with the equitable remedy of piercing the corporate veil." *Serio v. Baystate Props., LLC*, 209 Md. App. 545, 558, 60 A.3d 475, 483 (2013); *see Cavey v. Mach Trucking LLC*, GLR-16-1339, 2016 WL 5462791, at *4 (D. Md. Sept. 29, 2016). The case of *Dackman*, 413 Md. 158, 991 A.2d 1216, is instructive. There, the plaintiff sued an LLC and one of its members on behalf of two minors, alleging that the minors had been injured by lead-based paint while they lived in a building owned by the LLC. *Id.* at 137, 991 A.2d at 1219. The Maryland Court of Appeals considered, *inter alia*, whether the LLC could be held liable for negligently maintaining the building which allegedly caused the lead poisoning. *Id.* at 141, 991 A.2d at 1221.

The *Dackman* Court noted that, under existing law, "[a]n individual may be liable . . . 'for torts [he or she] personally commit[s], or which [he or she] inspire[s] or participate[s] in, even though performed in the name of an artificial body.'" *Id.* at 153, 991 A.2d at 1228 (alterations in *Dackman*). Although previous cases applied tort liability only to officers and agents who had "personally committed, inspired, or participated in torts in the name of a *corporation*", the court determined that the same principles apply to members of LLCs. *Id.* (emphasis added). The Maryland Court of Appeals concluded, *id.* at 154, 991 A.2d at 1228: "An LLC member is liable

for torts he or she personally commits, inspires, or participates in because he or she personally committed a wrong, not 'solely' because he or she is a member of the LLC."

Turning to the facts before it, the *Dackman* Court determined "that the trier of fact could find that [the member] is personally liable for [plaintiffs'] alleged injuries." *Id.* at 155, 991 A.2d at 1230. Because the member was the only person to manage the day-to-day affairs of the building during the relevant period, there was "sufficient evidence for the trier of fact to find that [the member] personally committed, inspired, or participated in [the LLC's] decisions regarding maintenance of the property." *Id.* at 155-56, 991 A.2d at 1230. Accordingly, the fact finder could conclude that the member was personally liable for negligently maintaining the building. *Id.* at 155, 991 A.2d at 1230.

Plaintiff contends that Steelman is "immune" from defendants' negligent misrepresentation claim because *Dackman* "has not been expanded to cover employees," yet defendants "identify[] [Steelman] as a controller and vice president . . . rather than a member or manager." ECF 41 at 19. Plaintiff's argument is unavailing. At its core, *Dackman* merely reaffirmed the unremarkable principle that a person is liable for torts that he or she personally commits. *See Dackman*, 413 Md. at 154, 991 A.2d at 1228 ("An LLC member is liable for torts he or she *personally* commits, inspires, or participates in *because he or she personally committed a wrong*[.]" (emphasis added)). Thus, whether the tortfeasor is a LLC member or a LLC employee is a distinction without a difference; both may be liable for injuries that they inflict separate and apart from whether the LLC is liable. Accordingly, I shall proceed to determine whether the SAC plausibly alleges a claim of negligent misrepresentation against the proposed third-party defendants.

To state a claim for negligent misrepresentation under Maryland law, the plaintiff must allege:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Lloyd*, 397 Md. at 136, 916 A.2d at 273 (internal quotation marks omitted); *see also Griesi v. Atlantic Gen'l Hosp. Corp*., 360 Md. 1, 11, 765 A.2d 548, 553 (2000); *Blondell*, 413 Md. at 119, 991 A.2d at 94; *Valentine v. On Target*, 353 Md. 544, 549, 727 A.2d 947, 949 (1999); *see also Med. Personnel, Inc. v. Ameritox, LLC*, 18-CCB-1527, 2018 WL 5810866, at *2 (D. Md. Nov. 6, 2018). Notably, promissory representations and predictive statements, while actionable for fraud, cannot support a claim for negligent misrepresentation. *See Orteck*, 2006 WL 2572474 at *20 ("To the extent that a party making the representation about its future conduct knows at the time the statement is made that it is false, the [negligent misrepresentation] claim converts to one of *fraudulent* misrepresentation.") (emphasis in original); *see also Ameritox, LLC*, 2018 WL 5810866, at *2 ("While a promissory representation made with an existing intention not to perform is actionable for fraud, such a representation is not actionable for negligent misrepresentation." (internal citations and quotation marks omitted)).

As noted, Count Four is lodged against Kiddie and Kiddie officers Helwig, Steelman, Frick, Gould, Wise, and Murphy. ECF 40-1, ¶ 95. Scrutinizing the allegations contained in the SAC, I conclude that defendants have alleged a plausible claim against Steelman and Frick but not Helwig, Wise, Gould, and Murphy.

The Proposed Second Amended Counterclaim alleges that Frick and Steelman made false statements to defendants on which they reasonably relied. Regarding Frick, defendants allege that

he sent the Sumanths an email on March 24, 2014, stating that Evolve Bank underestimated the profitability of defendants' franchise. *Id.* ¶ 27; *see* ECF 40-4. They assert: "The effect of this e-mail was to deceive Defendants further into believing that they had good business prospects, when Kiddie in fact knew that the loan, even using "best case" numbers was highly questionable. Had Defendants known that the loan was so questionable, they would not have proceeded with getting a loan and would not have lost the money they lost on the franchise with Kiddie." ECF 40-1, ¶ 27.

As for Steelman, she allegedly sent defendants inaccurate pro formas on two occasions, May 9, 2011, and June 19, 2013. *Id.* ¶¶ 21, 24. To be sure, some of the information in the pro formas was inherently speculative, such as estimates regarding tuition revenue or initial enrollment. But, the pro formas also contained ascertainable data, including the number of teachers Texas law requires to operate a childcare center, the cost of child-sized toilets, and the cost of payroll and property taxes. *Id.* ¶¶ 21, 34. Here too, defendants allege that this information was false and led them to relocate from California to Texas, to obtain a loan to construct a Kiddie childcare center, and to build the center in Cedar Park, Texas. *Id.* ¶ 33.[7]

These allegations, taken in the light most favorable to defendants, sufficiently allege that Frick and Steelman made false statements to defendants that were likely to induce reliance and which, in fact, harmed defendants. Frick allegedly misled defendants regarding the quality of the analysis performed by Evolve Bank, which led them to continue pursuing a loan to start their franchise. And, Steelman allegedly provided defendants with inaccurate pro formas that defendants used to obtain the loan. Thus, because defendants' claim against Frick and Steelman

---

[7] I do not consider the matter of whether defendants reasonably relied on data that was available to them from other sources.

is not "clearly insufficient or frivolous on its face," *Johnson*, 785 F.2d at 510, I shall grant counterclaimants' request to proceed against Frick and Steelman.

In contrast, the SAC does not state a plausible negligent misrepresentation claim against Helwig, Wise, Murphy, or Gould. Regarding Helwig and Wise, defendants allege that they "falsely assured Defendants of Kiddie's support and constantly assured [the Sumanths] that their lack of industry experience would not be an issue[.]" ECF 40-1, ¶ 32. Further, defendants allege that, in July 2016, they asked Helwig to provide them with an action plan, but instead Helwig "threatened" defendants "with a wage garnishment and lawsuit by Kiddie, if [defendants] filed a lawsuit against Kiddie." *Id*. ¶ 61. And, they allege that Wise laughed at Conley when told the pro formas were unrealistic. *Id.* ¶ 22.

As for Murphy, he allegedly "promised that Kiddie would appoint a Franchise Business Consultant who had experience to provide ongoing operation support" to defendants. *Id.* ¶ 31. He also allegedly told defendants during a meeting on April 20, 2015, that their pro formas "were very aggressive and overly optimistic." *Id.* ¶ 58. And, at the same meeting, he refused to share historical information on other franchises with defendants "due to 'proprietary reasons.'" *Id.* ¶ 59.

With respect to Gould, defendants allege that Gould "told them Defendants [sic] that to qualify for a bank loan Defendants would need to increase their net worth on their personal financial statement. . . . as if this was a common business practice." *Id.* ¶ 17. Gould also allegedly told defendants "that the site selection process takes anywhere from 3 to 9 months," a representation that led defendants to prolong their search for a franchise location. *Id.*

None of these allegations gives rise to a negligent misrepresentation claim. Some— Helwig's alleged threats, Wise laughing at Conley—do not involve false statements. Those that allegedly do, such as Gould's remark about defendant's net worth or Murphy's pledge to provide

a consultant, are predictions, puffery, or promises, none of which are actionable for negligent misrepresentation. Nor is it clear how these comments induced detrimental reliance. For example, it blinks reality to believe that defendants relied on Gould's representation regarding site selection, given that they spent two-and-a-half years searching for a franchise location, far longer than the nine months he predicted. *Id.* ¶ 41. Accordingly, amending the counterclaim to include Helwig, Wise, Murphy, and Gould would be futile.

### F. Motion for Attorney's Fees

In the Motion to Amend, defendants request attorney's fees and costs for the expense involved in serving the third-party defendants, pursuant to Fed. R. Civ. P. 4(d)(2). ECF 40 at 4. This is warranted, they contend, because the third-party defendants refused to waive service of process as requested by counterclaimants. *Id.* at 1-2. Plaintiff counters that defendants are not entitled to fees because their efforts to obtain a waiver of service did not comply with Local Rule 103.2(c) or Fed. R. Civ. P. 4(d)(1). *See* ECF 41 at 20-21.

Fed. R. Civ. P. 4(d) establishes the procedures for waiver of service. Rule 4(d)(1) states: "An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons." Under Fed. R. Civ. P. 4(d)(1), an effective notice and waiver must:

> (A) be in writing and be addressed:
>
>> (i) to the individual defendant; or
>>
>> (ii) for a defendant subject to service under Rule 4(h), to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process;
>
> (B) name the court where the complaint was filed;

(C) be accompanied by a copy of the complaint, 2 copies of the waiver form appended to this Rule 4, and a prepaid means for returning the form;

(D) inform the defendant, using the form appended to this Rule 4, of the consequences of waiving and not waiving service;

(E) state the date when the request is sent;

(F) give the defendant a reasonable time of at least 30 days after the request was sent—or at least 60 days if sent to the defendant outside any judicial district of the United States—to return the waiver; and

(G) be sent by first-class mail or other reliable means.

If a defendant refuses to waive service without good cause, the court must impose the following on defendant: (1) "the expenses later incurred in making service"; and (2) "the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses." Fed. R. Civ. P. 4(d)(2).

Further, Local Rule 103.2(c) provides that when a party seeks to invoke rule 4(d), "counsel shall submit to the Clerk a notice identifying the defendant(s) to whom the notice and request to waive service of summons is being sent. The notice shall be filed upon the filing of the complaint or such later date that counsel decides to invoke the waiver procedure." Local Rule 103.2(c).

Plaintiff asserts that defendants sent waiver requests to Kiddie, not third-party defendants individually, as required by Rule 4(d)(1)(A). Defendants did not respond to this contention in their Reply. But, the docket does not reflect that defendants filed a notice requesting waiver of service as required by Local Rule 103.2(c). *See* Docket.

Compliance with the requirements set forth in Rule 4(d)(1) is a condition precedent to recovering attorney's fees and costs. *See Suggs v. Cent. Oil of Baton Rouge, LLC*, No. 13-25-RLB, 2014 WL 3374719 at *3 (M.D. La. July 9, 2014) (Bourgeois, M.J.) (denying attorneys' fees and costs incurred in serving defendant because "[f]ailure to comply with the specific requirements

of Rule 4(d)(1) will foreclose any award of cost"); *Perez v. Cty. of Westchester*, 83 F. Supp. 2d 435, 441 (S.D.N.Y. 2000) (denying motion for reimbursement of costs and attorneys' fees because "[t]he only request for waiver of personal service was made by [plaintiff's] lawyer in a letter to defense counsel"); *accord Armco, Inc. v. Pernod-Staufer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 n.1 (4th Cir. 1984) (observing that while "every technical violation of [Rule 4] or failure of strict compliance may not invalidate the service of process . . . . the rules are there to be followed, and plain requirements for the means of effective service of process may not be ignored"). Accordingly, defendants' request for attorney's fees and costs is denied.

## IV. Conclusion

For the foregoing reasons, the Motion to Amend (ECF 40) is GRANTED in part and DENIED in part. I shall deny defendants' request to revive Counts One through Three and their request to assert claims against Helwig, Wise, Murphy, and Gould. However, I shall permit defendants to amend Count Four. And, defendants may pursue a negligent misrepresentation claim against Steelman and Frick, provided that defendants effectuate service, as required by Fed. R. Civ. P. 4(m). Defendants' request for attorney's fees and costs is denied.

An Order follows, consistent with this Memorandum Opinion.


Date: November 15, 2019                    _____/s/_____
                                           Ellen L. Hollander
                                           United States District Judge